**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-033**

**Filing Date: March 4, 2010**

**Docket No. 28,839**

**WARREN AND BETTY BEAVER,**

        **Plaintiffs-Appellants,**

**v.**

**MICHAEL AND KAREN BRUMLOW,**

        **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Richard A. Hawthorne, P.C.
Richard A. Hawthorne
Ruidoso, NM

Gibson & Leonard, P.A.
JulieAnne Leonard
Ruidoso, NM

for Appellants

Attorneys at Law, P.C.
David M. Stevens
Ruidoso, NM

for Appellees

**OPINION**

**VIGIL, Judge.**

**{1}**     This case is about a verbal agreement made by Warren and Betty Beaver (Sellers) to sell land for a home site to Michael and Karen Brumlow (Buyers).  Sellers reneged on the agreement after Mr. Brumlow left Sellers' employment and started working for a competitor.

1

The trial court ordered specific performance of the oral agreement, and Sellers appeal. Sellers acknowledge that the evidence was sufficient for the trial court to find that they made the agreement with Buyers. Nevertheless, Sellers contend that specific enforcement of the verbal agreement is barred pursuant to the statute of frauds. We disagree and affirm.

**BACKGROUND**

{2}     Sellers do not challenge the findings of fact made by the trial court. Therefore, the trial court findings of fact are undisputed and are binding on appeal.

{3}     Buyer Michael Brumlow worked for Sellers in their race horse transportation business for approximately ten years, beginning in 1994, and ending in 2004. In October 2000, Sellers purchased twenty-four acres of property in the Village of Ruidoso Downs, and in approximately June or July of 2001, Mr. Brumlow asked Seller Warren Beaver if he would sell some of the land to put a home on. Mr. Beaver agreed, and the parties walked the specific boundaries of the property that Sellers would sell to Buyers.

{4}     Sellers allowed Buyers to rely on their representations to Buyers that Sellers would sell Buyers the subject property. Buyers went into possession of the land with Sellers' consent. In reliance on Sellers' agreement to sell, Buyer Karen Brumlow cashed in her IRA and 401-K retirement plans, at a substantial penalty, to pay for the home and improvements. Buyers purchased a double-wide home and moved it onto the property. Mr. Beaver signed an application with the Village of Ruidoso Downs for placement of the home on the property he agreed to sell to Buyers. In reliance on the agreement, Buyers also skirted the mobile home, poured concrete footers and a concrete foundation for the home, built a deck and two sets of stairs to access the home, had electricity and a water supply run to the property, had a septic system installed, had a propane system installed, brought a Tuff Shed for storage onto the property, and landscaped the property. Mr. Beaver signed the application/approval required by the Village of Ruidoso Downs for the construction of the septic system. In reliance on the agreement, Buyers spent approximately $85,000.

{5}     Sellers sought legal advice as to the manner in which to sell the property to Buyers, and the parties discussed with Sellers' attorney the requirement of a survey, and either a real estate contract or a note and mortgage. A fair inference from the record is that formal documents were not prepared and executed because Sellers discovered that their property was encumbered with a mortgage containing a due on sale clause. Throughout their time on the land, Buyers repeatedly requested that their contract be formalized, and Sellers responded, "We will work it out."

{6}     A date certain was never determined for the sale of the property or transfer of title to the property, nor was a price actually determined. However, Mr. Brumlow assumed he would pay whatever the market would bear in that particular neighborhood. He testified he thought the price would be "whatever it was worth."

2

**{7}** Sellers drove by Buyers' home location daily during the time Buyers were making improvements to the land and setting up the home without ever expressing an intent not to sell the subject property to Buyers. Sellers never attempted to interrupt Buyers' quiet possession of the property during the years of possession. Sellers allowed Buyers to rely on their representations to Buyers that Sellers would sell Buyers the subject property for years without notifying Buyers they intended to renege on their promise.

**{8}** In March 2004, Mr. Brumlow gave Mr. Beaver a two-week notice of termination of his employment with Sellers, intending to go to work for a competitor of Sellers in the race horse transportation business. The relationship between the parties rapidly deteriorated, and Sellers changed their mind and decided not to sell the agreed upon tract of land to Buyers because of hurt or anger. Sellers then attempted to restructure the agreement as a "lease" as opposed to a sale, and then attempted to terminate the "lease" and evict Buyers. Sellers prepared and required Buyers to sign an "Agreement." The "Agreement" required Buyers to pay Sellers $400 per month, and Buyers complied, believing it was payment for the land. When Buyers began writing "Land Payment" on the checks, Sellers stopped cashing the checks and alleged that the "Agreement" was for rental, although the "Agreement" did not contain the words "Rent," "Rental," "Lease," or "Leasehold." Buyers attempted to amicably resolve the dispute by offering to pay cash in the amount of the fair market value for the property and to have the property surveyed at their expense. Sellers refused.

**{9}** Sellers then filed a suit for ejectment against Buyers, seeking to remove them from the property by alleging that Buyers were in violation of a rental agreement. Buyers denied the existence of a rental agreement and affirmatively alleged that their occupancy was pursuant to an agreement to purchase the property. Buyers also filed counterclaims which included claims for breach of contract, fraud, and prima facie tort. Sellers pleaded the statute of frauds as a defense.

**{10}** The trial court concluded that Sellers entered into a contract with Buyers to sell them a specific portion of their land and that Sellers reneged on their agreement to sell the property to Buyers. The trial court further determined that Sellers changed their mind three years after making the contract, chose not to honor it, and attempted to unilaterally restructure the contract into a lease, which was never intended. In committing these acts, the trial court concluded, Sellers committed a prima facie tort, which they knew would harm Buyers. Addressing the statute of frauds defense, the trial court concluded that while the parties had no written agreement, the verbal agreement was proven by clear, cogent, and convincing evidence and that part performance of the contract by both Buyers and Sellers was sufficient to remove the contract from the statute of frauds. Furthermore, the trial court concluded, requiring a cash payment of the fair market value, as determined by a professional appraiser, was a proper equitable remedy.

**{11}** The trial court allowed Buyers a choice of remedy: money damages for the prima facie tort or specific performance of the contract. Buyers chose specific performance. The property was appraised at a value of $10,000 by a professional appraiser, and a survey of the

3

property to be sold was prepared. The final judgment directs that Buyers tender to Sellers the amount of $10,000 by depositing that amount into the trust account of Buyers' attorney within thirty days from the entry of the judgment, and that Sellers prepare and execute a good and sufficient warranty deed to Buyers for the property as described in the testimony of Mr. Brumlow and as depicted on the survey of the property. Upon receipt of the warranty deed executed by Sellers, payment of the $10,000 is to be made to Sellers. All other claims and counterclaims were dismissed with prejudice. Sellers appeal.

**{12}** Sellers contend that specific enforcement of the oral contract is barred pursuant to the statute of frauds because: (1) Buyers' part performance was not "unequivocally referable" to the verbal agreement; and (2) the verbal agreement was not certain as to the purchase price and time of performance. Sellers also argue that specific performance was improper because Buyers had an adequate remedy at law in damages. For the following reasons, we disagree and affirm.

**STANDARD OF REVIEW**

**{13}** Applicability of the statute of frauds raises a question of law, which we review de novo. *Ellen Equip. Corp. v. C.V. Consultants & Assocs.*, 2008-NMCA-057, ¶ 16, 144 N.M. 55, 183 P.3d 940. We review the trial court judgment granting specific performance for an abuse of discretion. *See Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 693-94, 652 P.2d 240, 243-44 (1982) (stating that we review the grant of an equitable remedy for an abuse of discretion), *overruled on other grounds by Universal Life Church v. Coxon*, 105 N.M. 57, 58, 728 P.2d 467, 469 (1986). "An abuse of discretion will be found when the trial court's decision is contrary to logic and reason." *Three Rivers Land Co.*, 98 N.M. at 694, 652 P.2d at 244.

**THE STATUTE OF FRAUDS**

**{14}** The origin of the statute of frauds in the United States was the English statute entitled, "An Act for the Prevention of Frauds and Perjuries," 29 Charles 2, ch. 3 (1677). *See* 72 Am. Jur. 2d *Statute of Frauds* § 1 (1974). "This statute was originally enacted to prevent fraud and perjury in the enforcement of obligations depending for their evidence on the memory of witnesses by requiring certain enumerated contracts and transactions to be evidenced by a writing signed by the parties." *Weber v. De Cecco*, 61 A.2d 651, 653 (N.J. Super. Ct. Ch. Div. 1948). When the statute was enacted in England, it was deemed necessary because the jury system was unreliable, rules of evidence were few, and the complaining party was disqualified as a witness so he could neither testify on direct examination nor be cross-examined. *See McIntosh v. Murphy*, 469 P.2d 177, 179 (Haw. 1970) (citing Summers, *The Doctrine of Estoppel and The Statute of Frauds*, 79 U. Pa. L. Rev. 440, 441 (1931)).

**{15}** In 1876, our Territorial Legislature enacted Section 1823, C.L. 1884, which directs, "'in all courts of this territory, the common law, as recognized in the United States of

4

America, shall be the rule of practice and decision.'" *Browning v. Browning*, 3 N.M. (Gild.) 659, 671, 9 P. 677, 682 (1886) (quoting Section 1823). Under Section 1823, the Legislature intended "to adopt the common law, or lex non scripta, and such British statutes of a general nature not local to that kingdom, nor in conflict with the [C]onstitution or laws of the United States, nor of this territory, which are applicable to our condition and circumstances, and which were in force at the time of our separation from the mother country." *Browning*, 3 N.M. at 675, 9 P. at 684. In *Childers v. Talbott*, 4 N.M. (Gild.) 336, 339, 16 P. 275, 276 (1888), our Territorial Supreme Court held that the English statute of frauds was adopted in New Mexico. Thus, "[t]he statute of frauds is with us as a part of the common law." *Ades v. Supreme Lodge Order of Ahepa*, 51 N.M. 164, 171, 181 P.2d 161, 165 (1947). While the underlying reasons justifying adoption of the statute of frauds no longer exist, retention of the statute has been justified for three primary reasons: the statute still serves an evidentiary function, and thereby lessens the danger of perjured testimony (the original reason for the statute); the requirement of a writing causes the parties to reflect on the importance of the agreement; and the writing requirement makes it easier to distinguish agreements which are enforceable from those which are not. *See McIntosh*, 469 P.2d at 179.

**{16}** This case involves the fourth section of the English statute of frauds, which in pertinent part states,

> No action shall be brought upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized.

*Childers*, 4 N.M. at 340, 16 P. at 276 (quoting Section 4 of the statute of frauds).

**PART PERFORMANCE**

**{17}** Notwithstanding its language, judicial construction of the statute of frauds has resulted in limiting its application in order to overcome the harshness and injustice of a literal and mechanical application of its terms. *McIntosh*, 469 P.2d at 180. One well settled exception, recognized in New Mexico, is the doctrine of part performance. *Alvarez v. Alvarez*, 72 N.M. 336, 341, 383 P.2d 581, 584 (1963).

**{18}** "Where an oral contract not enforceable under the statute of frauds has been performed to such extent as to make it inequitable to deny effect thereto, equity may consider the contract as removed from operation of the statute of frauds and decree specific performance." *Id.* In this case, the trial court concluded:

> [T]he evidence is clear, cogent and convincing so as to remove the case from the application of the [s]tatute of [f]rauds and that there is significant partial performance by both parties, [Buyers] in expending so much time, energy

5

and money developing the parcel of property and [Sellers] in applying for permission to have the personal property placed on the land, seeking advice of counsel as to the manner in which to sell the property and allowing [Buyers] to rely on their representations and to reside on the property for years. The [c]ourt finds that applying the [s]tatute of [f]rauds would be unfair and inequitable.

**{19}**    Sellers do not contend that proof of the oral contract is lacking; in fact, they concede that the evidence is sufficient. Moreover, Sellers do not argue that the partial performance of Buyers was insufficient to overcome the statute of frauds or that their own partial performance was insufficient. Sellers' sole argument is that the *character* of Buyers' performance was not sufficiently indicative of an oral agreement to sell land to qualify as partial performance. *See Burns v. McCormick*, 135 N.E. 273, 273 (N.Y. 1922) ("Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing."); *Woolley v. Stewart*, 118 N.E. 847, 848 (N.Y. 1918) ("An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance."), *quoted with approval in Alvarez*, 72 N.M. at 342, 383 P.2d at 585.

> A court of equity [therefore] requires that a part performance relied on to take the case out of the statute [of frauds] should be of a character, not only consistent with the reasonable presumption that what was done was done on the faith of such a contract, but also that it would be unreasonable to presume that it was done on any other theory.

*Alvarez*, 72 N.M. at 342, 383 P.2d at 585 (internal quotation marks and citation omitted).

**{20}**    Sellers argue that Buyers' acts are not "unequivocally referable" to their agreement because Buyers' actions could also be consistent with those taken by a person who needs a place to live and who is given an opportunity to reside on another person's property. Sellers argue that if there is an alternative explanation for the actions taken in reliance of the oral contract, those actions are not "unequivocally referable" to the contract, and application of the part performance doctrine is improper. We disagree.

**{21}**    In *Nashan v. Nashan*, 119 N.M. 625, 630-31, 894 P.2d 402, 407-08 (Ct. App. 1995), we discussed the interrelationship of the factors that may be considered in determining whether a contract to convey land has been proven and whether it would be inequitable to enforce the contract. We said:

> Whatever the purpose of each test, however, the main questions are the same for a court faced with a case such as this one—was there actually an oral

6

agreement such as that alleged by the plaintiff, and if so would it be inequitable to deny enforcement to the agreement? The factors should not be applied mechanically to determine whether the plaintiff's performance has met a particular test. Instead, the case must be viewed as a whole to determine whether specific performance of the agreement is required.

*Id.* at 631, 894 P.2d at 408. Thus, we reject the suggestion that the "unequivocally referable" concept means that outside of the contract, there can be no other plausible explanation for the part performance. In fact, we described the "unequivocally referable" concept in plain language as "meaning that an outsider, knowing all of the circumstances of a case except for the claimed oral agreement, would naturally and reasonably conclude that a contract existed regarding the land, of the same general nature as that alleged by the claimant." *Id.* at 630, 894 P.2d at 407 (citing *Smith v. Smith*, 466 So. 2d 922, 925 (Ala. 1985)). We did not say that the performance must relate exclusively to the oral contract; rather, the performance must lead an outsider to "naturally and reasonably" conclude that the contract alleged actually exists. Two key specific factors, approved by this Court and many other courts, in coming to such a conclusion, are taking possession of the property, and making valuable, permanent, and substantial improvements to the property. *Id.* at 630-31, 894 P.2d at 407-08. Where these two factors coincide, specific performance usually results. *Id.*

{22}     In this case, Buyers went into possession of the specific land Sellers agreed to convey with Sellers' consent. In reliance on the agreement, Buyers cashed IRA and 401-K retirement plans at a substantial penalty, purchased a double-wide mobile home, and with Sellers' consent, moved it onto the property. Buyers also erected valuable temporary and permanent improvements on the land, and landscaped the property with Sellers' consent. In reliance on the agreement, Buyers spent approximately $85,000 in purchasing the home and making improvements. We hold Buyers' actions were sufficient part performance in reliance on the oral agreement to take the agreement outside of the statute of frauds.

## SUFFICIENCY OF THE VERBAL AGREEMENT

{23}     The trial court concluded:

[T]he terms of the contract were that [Sellers] would sell to [Buyers] the piece of property included in the demarcation of the landmarks as testified to by [Mr. Brumlow]. While the purchase price was never agreed upon, the [c]ourt finds that [Buyers] should pay to [Sellers] the fair market value of the property as determined by an objective appraiser, in one lump sum, within sixty days of the [c]ourt's decision. Imposing fair market value and requiring a cash payment is the equitable remedy.

Sellers assert that by ruling that the purchase price would be established by an appraisal and that the terms of the payment would be in cash payable within thirty days, the trial court "formulated an agreement between the parties that never existed" and it "enforced terms and

conditions on the parties that they had not had a meeting of the minds upon" which is "exactly" what the court in *Bellamah v. Schmider*, 68 N.M. 247, 360 P.2d 656 (1961) "said the courts should not do."

**{24}** *Bellamah* is inapplicable to the facts of this case. In *Bellamah*, the parties entered into a *written* contract for the plaintiff to purchase approximately seventy-six acres of land from the defendants for subdivision purposes for $190,000, with an immediate payment of $19,000 upon execution of the contract, and the balance at $10,000 per year. *Id.* at 249, 360 P.2d at 657. Upon payment of the initial $19,000, the plaintiff was to receive a deed to 10% of the land, to be selected by him. *Id.* Before the contract was signed, the plaintiff learned that the defendants did not own two tracts of land within the seventy-six acres, and he tendered the owners of these tracts $17,034, conditioned upon the defendants agreeing to an abatement of the initial amount under the written contract. *Id.* After the contract was executed, the plaintiff tendered to the defendants $1,966 in full satisfaction of the initial payment. *Id.* When the defendants refused the tender, the plaintiff filed suit to enforce, by specific performance, the written contract, with an abatement of the initial $17,034. *Id.* at 249-50, 360 P.2d at 657. The Court said:

> [T]he rule is that with certain exceptions, not present under the facts here, a vendee who at the time of the contract knew of vendor's failure of title to a portion of the land is not entitled, in an action for specific performance, to compensation or abatement of the purchase price. Particularly is the rule denying vendee specific performance and abatement applicable where the vendee not only had actual knowledge of vendor's lack of title to part of the land at the time of the contract but, likewise, had actual knowledge that vendor would not acquire title to the missing part so as to be able to convey it to vendee.

*Id.* at 250-51, 360 P.2d at 658. The Court deemed it "especially significant" that no provision was made in the contract for any reduction in the purchase price if the defendants were unable to convey all of the described tract even though all parties knew at the time the contract was signed that the defendants did not own the two strips. *Id.* at 251, 360 P.2d at 658. In that context, the Court said, "In suits for specific performance courts will not make a new contract for the parties which they did not make for themselves nor enforce conditions upon which they had obviously not had a meeting of the minds." *Id.*

**{25}** This case is more analogous to *Colcott v. Sutherland*, 36 N.M. 370, 16 P.2d 399 (1932), in which our Supreme Court suggested that a claim for specific performance of a contract involving land will not fail for failure to specify a price where the contract is otherwise complete, and there has been part performance of the contract by a transfer of possession. *Id.* at 374-75, 16 P.2d at 401-02. In *Colcott*, the buyer alleged that the owner agreed to sell the buyer two acres from a parcel he owned for the sum of $150 per acre, provided that the buyer gave the seller an option to buy the land back if the buyer decided to move a gin he was planning on constructing on the land in the future. *Id.* at 371-72, 16

P.2d at 400. In reliance on the agreement, the buyer alleged he went into possession of the land and constructed the gin at a cost of $25,000. *Id.* at 372, 16 P.2d at 400. However, the parties never agreed on a price at which the seller could repurchase the property, nor did they agree on a means for determining the repurchase price. *Id.* at 374, 16 P.2d at 401. On this basis, the seller asserted that the allegations failed to state a claim for specific performance because there was no contract. *Id.* at 373-74, 16 P.2d at 400-01. Our Supreme Court said:

> The parties having thus agreed, what is the effect of the omission to stipulate the price for a repurchase? [The seller] contends that it results in incompleteness and uncertainty fatal to the remedy of specific performance. [The buyer] says there is no incompleteness or uncertainty, since the law's implication binds the parties to a reasonable price, and equity has means to determine it. *This may be entirely sound.*

*Id.* at 374-75, 16 P.2d at 401 (emphasis added) (citing John Norton Pomeroy & John C. Mann, *Specific Performance of Contracts* § 148, at 380-82 (3d ed. 1926)). However, the suit was not for specific performance of the seller's option to repurchase; it was to enforce the contract to sell to the buyer. Accordingly, the Court did not decide whether an action would lie for specific performance of the option itself. *Id.* While our Supreme Court did not decide the issue, its statement that the buyer's position "may be entirely sound" and citation to Pomeroy & Mann is highly suggestive of its answer. In its entirety, the Pomeroy reference states:

> In all contracts of sale, assignment, and the like, the price is, of course, a material term. It must either be fixed by the agreement itself, or means must be therein provided for ascertaining it with certainty. In the absence of such provision, either stating it or furnishing a mode for fixing it, the agreement would be plainly incomplete, and could not be enforced; and if the contract is written, this term must appear in the memorandum or written instrument. This rule, of course, does not apply to gifts, which, under certain circumstances of parol performance by the donee, will, as has already been shown, be enforced by courts of equity. There is an apparent but not real exception to this general proposition. A valid contract of sale may be made without any stipulation as to the price, the law in such case implying that the price is the reasonable value of the thing which is the subject-matter of the agreement. This is, however, no exception to, but rather a special instance of, the foregoing rule; because such a contract does, in fact, by operation of the law, furnish a means of exactly ascertaining and fixing the price.

Pomeroy & Mann, *supra*, § 148, at 380-82 (footnotes omitted).

{26} *O'Keefe v. Aptos Land & Water Co.*, 286 P.2d 417 (Cal. Dist. Ct. App. 1955), applied the Pomeroy section quoted above in a factual scenario substantially identical to the facts before us in this case. The buyer wanted to purchase a parcel of land from the seller,

a corporation that was indebted to the buyer, as reflected in its stockholder account. *Id.* at 419-20. The only other stockholder of the corporation was the buyer's close and intimate business associate of many years. *Id.* at 419, 423. It was agreed that the corporation would sell the buyer the parcel of land and charge the buyer's stockholder account with the agreed value of the property. *Id.* at 420. In reliance on the agreement, the buyer went into possession, built a home, made extensive and permanent improvements to the property, and took up his residence there. *Id.* The buyer then said he wanted to acquire two additional adjoining parcels under the same condition, and the parties agreed. *Id.* At all times, the buyer acted with the knowledge and acquiescence of his business partner and friend, who visited the property frequently, and knew of the buyer's reliance on the agreement, but failed to make the debit entry onto the seller's corporate books, although he handled the finances of the corporation. *Id.* at 423. The buyer ultimately made permanent improvements to the property at a cost of not less than $35,000. *Id.* at 423. When the buyer died, the seller asserted the buyer did not own the property because he took possession under an oral contract but never paid any consideration for the land. *Id.* at 419. Judgment quieting title in favor of the buyer's estate was entered following a bench trial. *Id.*

**{27}** The California District Court of Appeals affirmed. The court first observed, "The trial court may have believed that although the parties intended that [the buyer] pay for the property, no definite price had been determined, perhaps had not even been discussed. In such a case, to prevent an inequitable result, the court could imply a reasonable price." *Id.* at 422. Directly addressing the seller's argument that in the absence of a stipulated price, the contract was too uncertain to be enforced, the court said, "The mere fact that an agreement is silent as to price does not necessarily make it unenforceable," *id.* at 423, and quoted from Pomeroy & Mann, *supra*, § 148 to support its statement. The court then held that in that circumstance, the law would imply that the contractual price is deemed to be the reasonable value of the land. *O'Keefe*, 286 P.2d at 423-24.

**{28}** We adopt the holding of *O'Keefe* in this case. Buyers proved to the satisfaction of the trial court by clear, cogent, and convincing evidence that Sellers entered into a contract to sell specific land to Buyers, as reflected in its conclusions of law quoted above. In addition, there was significant specific part performance by both Buyers and Sellers in reliance on the contract they made. In particular, Buyers cashed their retirement plans, went into possession of the property, moved their home onto the property, and made significant improvements to the land at a total cost of approximately $85,000, all with the knowledge and consent of Sellers for several years. Buyers assumed they would have to pay whatever the property was worth, and Sellers consulted an attorney to draft the sale documents. When Buyers repeatedly asked that the contract be formalized, Sellers' response was, "We will work it out." Thus, it is through no fault of Buyers that formal contract documents were not written with a set price and terms. Under these circumstances, it was within the equitable jurisdiction of the trial court to set the price at the fair market value as determined by an objective appraiser. We take particular note that Sellers do not dispute on appeal the fairness of the price established by the trial court.

10

**{29}**     Sellers would have us invalidate what was unquestionably a valid contract based on a mechanical application of contract law.  We decline to do so.  *See Herrera v. Herrera*, 1999-NMCA-034, ¶ 13, 126 N.M. 705, 974 P.2d 675 (noting that the purpose of the statute of frauds is to prevent fraud and perjury, not to prevent the performance or enforcement of oral contracts that have been made or to create a loophole of escape for a person who seeks to repudiate a contract he admits was made).  Sellers do not seem to acknowledge that this is a case under the equitable jurisdiction of the trial court.  "In the general juristic sense, equity means the power to meet the moral standards of justice in a particular case by a tribunal having discretion to mitigate the rigidity of the application of strict rules of law so as to adapt the relief to the circumstances of the particular case."  Henry L. McClintock, *Principles of Equity* § 1, at 1 (2d ed. 1948).  We hold that there was no error committed by the trial court by decreeing specific performance of the contract for Sellers to sell, and Buyers to buy, the subject property for its fair market value.

**{30}**     Sellers also assert that the trial court erred in decreeing that the sale would close within sixty days of its decision because that term was absent from the agreement.  Largely for the reasons already expressed, we reject this argument as well.  Moreover, when an agreement does not specify a time for performance, it is implied that it is to be performed within a reasonable time, and what is a reasonable time is a question of fact.  *See Smith v. Galio*, 95 N.M. 4, 7, 617 P.2d 1325, 1328 (Ct. App. 1980).

## ADEQUACY OF REMEDY AT LAW

**{31}**     Sellers argue that the remedy of specific performance was improper because Buyers have an adequate remedy at law for damages.  We disagree.

**{32}**     Sellers point out that the trial court dismissed Buyers' claim for fraud.  Sellers then assert:

> It [sic] order for equity to prevent the application of the statute of frauds, the party seeking specific performance must perform his part of the alleged oral agreement to such an extent that it would constitute a fraud on him to permit the other party to use the defense of the statute of frauds, and where the contract is one for the conveyance of real property, the part performance must be of such exceptional or extraordinary nature that they are incapable of compensation measured by definite monetary standards.

In support of this assertion, Sellers refer us to *Hubbard v. Mathis*, 72 N.M. 270, 383 P.2d 240 (1963).  This case is not applicable.  In *Hubbard*,

> [t]he only question on the appeal is whether the services which appellant rendered with respect to the investment properties were of a type which would remove this provision of the alleged contract [of services in exchange for a ten percent interest of the value of the investment properties] from the

11

bar of the statute of frauds. Unless these services are of such a nature as to render them incapable of compensation by any pecuniary standard, or if they cannot be compensated for on the basis of quantum meruit, they are not of the peculiar character requisite to a removal of this contract from the statute of frauds.

*Id.* at 272-73, 383 P.2d at 242. The Court said:

It is true that equity will regard the bar of the statute of frauds as removed when one party has so far performed his part of its terms that it would amount to a fraud on him to permit the other party to use the defense of the statute of frauds. But where the contract is one for conveyance of real estate and the performance relied upon to remove it from the statute of frauds consists of services rendered, the services must be of such exceptional or extraordinary nature that they are incapable of compensation measured by definite monetary standards.

*Id.* at 273, 383 P.2d at 242 (citations omitted). The case before us does not involve rendering services in exchange for real property, and *Hubbard* does not even suggest that specific performance as a remedy is limited to circumstances of actual fraud.

**{33}** Sellers also argue that Buyers' part performance "could have been very easily compensated for with money." However, Buyers did not seek damages for their part performance; they relied on their own part performance, as well as the part performance of Sellers to compel specific performance of the contract to sell them land. Moreover, it is well settled that land is assumed to have special value not replaceable in money. 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.11(3), at 299 (2d ed. 1993).

When real property is the subject matter of the agreement, the legal remedy of damages may be assumed to be inadequate, since each parcel of land is unique. Thus, even though the availability of an equitable remedy such as specific performance generally depends on the inadequacy of any remedy at law, where land is the subject matter of the agreement, jurisdiction of equity to grant specific performance does not depend upon the existence of special facts showing that legal remedy is inadequate.

81A C.J.S. *Specific Performance* § 56, at 229-30 (2004) (footnotes omitted); *see also State ex rel. State Highway Comn'n v. Clark*, 79 N.M. 29, 31, 439 P.2d 547, 549 (1968) ("[M]oney damages is not an adequate remedy in actions for specific performance of land sales contract.").

**{34}** For the foregoing reasons, we reject Sellers' arguments under this point.

**CONCLUSION**

**{35}**    The judgment of the trial court is affirmed.

**{36}    IT IS SO ORDERED.**

_____
                                        **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**ROBERT E. ROBLES, Judge**

**Topic Index for _Beaver v. Brumlow_, No. 28,839**

| | |
|---|---|
| AE | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| CN | **CONTRACTS** |
| CN-BR | Breach |
| CN-FR | Fraud, Duress, or Mistake |
| CN-OC | Oral Contract |
| CN-RE | Real Estate Contract |
| CN-SP | Specific Performance |
| CN-SF | Statute of Frauds |
| | |
| PR | **PROPERTY** |
| PR-EJ | Ejectment |
| PR-FR | Fraud |
| PR-IM | Improvements |
| PR-PH | Purchase Agreement |
| PR-QT | Quiet Title |
| PR-RE | Real Estate Contract |
| | |
| RE | **REMEDIES** |
| RE-ER | Election of Remedy |
| RE-EQ | Equity |
| RE-SP | Specific Performance |