**Certiorari Denied, December 6, 2010, No. 32,687**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-006**

**Filing Date: October 6, 2010**

**Docket No. 29,893**

**ROBERT ARMIJO,**

   **Cross-Claimant Plaintiff/Appellee,**

**v.**

**PUEBLO OF LAGUNA,**

   **Cross-Claim Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**William A. Sanchez, District Judge**

Tibo J. Chavez, Jr.
Belen, NM

Stephen K. Bowman
Corrales, NM

for Appellee

Nordhaus Law Firm, LLP
Daniel I.S.J. Rey-Bear
Albuquerque, NM

for Appellant

**OPINION**

**CASTILLO, Judge.**

**{1}**     The Pueblo of Laguna (the Pueblo) appeals the order of the district court denying the Pueblo's  motion to dismiss the cross-claims of Appellee Robert Armijo (Armijo) filed in a quiet title suit.  Our resolution of this appeal requires us to consider the issue of tribal

1

sovereign immunity as it relates to non-tribal land purchased by the Pueblo and whether the Pueblo is an indispensable party. We hold that the Pueblo is immune from suit under the doctrine of tribal sovereign immunity and, further, that the Pueblo is an indispensable party who cannot be joined. Accordingly, we reverse the order of the district court and remand for dismissal of Armijo's cross-claims.

## I.     BACKGROUND

{2}     In April 2008, the Pueblo, a federally recognized Indian Tribe organized under the Indian Reorganization Act, 25 U.S.C. § 476 (1934) (as amended through 2004), purchased a ranch (the Ranch) consisting of approximately 8,300 acres from Silver Dollar Ranch, LLC. The Ranch is situated within the Cebolleta Land Grant and outside the boundaries of the Pueblo. This matter concerns 640 acres of the Ranch identified as Section 16, Township 12 North, Range 6 West (Section 16).

{3}     In December 2008, the Board of Trustees of the Cebolleta Land Grant (the Board) brought an action to quiet title to Section 16. In its complaint, the Board named the Pueblo, Armijo, two other parties who have not appeared at any point during these proceedings, and all unknown claimants of interest as defendants.

{4}     In March 2009, the Pueblo moved to dismiss the Board's complaint. Relying on tribal sovereign immunity, the Pueblo argued that the court lacked subject matter jurisdiction under Rule 1-012(B)(1) NMRA. The Pueblo also argued for dismissal based on indispensability under Rule 1-019(B) NMRA and failure to state a claim under Rule 1-012(B)(6).

{5}     Armijo filed an answer to the Board's complaint. Therein, he asserted counterclaims against the Board for: (1) quiet title, asserting that he held title to Section 16 through a warranty deed that he obtained from the Board in September 1994; (2) adverse possession, asserting that he had "commenced actual and visible appropriation and possession of" Section 16 since 1994; and (3) breach of the warranty covenants of the 1994 warranty deed. Armijo also filed cross-claims against the Pueblo and the two nonappearing defendants asserting title to Section 16 through adverse possession.

{6}     In April 2009, the Board, the Pueblo, and Armijo stipulated to dismissal of the Board's complaint. Dismissal was based on "the preclusive effect of the prior quiet title decree between the Board and the Pueblo's predecessor in title." The stipulation further specified, however, that dismissal of the Board's complaint had no effect on Armijo's counterclaims against the Board for breach of warranty covenants, Armijo's cross-claims against the Pueblo and the nonappearing defendants for adverse possession, or the Pueblo's defenses as set forth in the motion to dismiss. Armijo's counterclaim against the Board is not at issue here.

{7}     Later in April 2009, the Pueblo moved to dismiss all of Armijo's cross-claims for

2

adverse possession based on grounds of tribal sovereign immunity and indispensability. The district court rejected the Pueblo's tribal sovereign immunity argument, concluded that the "court has subject matter and personal jurisdiction over [the Pueblo] in this matter because this matter arises outside the reservation," and denied the Pueblo's motion. The court did not address the Pueblo's argument that Armijo's cross-claims against the nonappearing defendants must also be dismissed on grounds that the Pueblo was an indispensable party to those claims and could not be joined. We accepted the Pueblo's interlocutory appeal.

## II.    DISCUSSION

**{8}**    On appeal, the Pueblo asks us to reverse the district court and dismiss Armijo's adverse possession cross-claims against the Pueblo and against the nonappearing defendants. As to Armijo's cross-claim against the Pueblo, the Pueblo argues that the district court does not have subject matter jurisdiction over that claim due to the Pueblo's tribal sovereign immunity. As to Armijo's cross-claims against the nonappearing parties, the Pueblo argues that, if we find the Pueblo immune from suit, dismissal of Armijo's cross-claims against the nonappearing parties is necessary pursuant to Rule 1-019.

### A.    Sovereign Immunity

**{9}**    We begin with the issue of the Pueblo's sovereign immunity. "In reviewing an appeal from an order granting or denying a motion to dismiss for lack of jurisdiction, the determination of whether jurisdiction exists is a question of law which an appellate court reviews de novo." *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 6, 132 N.M. 207, 46 P.3d 668; *see also Martinez v. Cities of Gold Casino*, 2009-NMCA-087, ¶ 22, 146 N.M. 735, 215 P.3d 44 ("We review de novo the legal question of whether an Indian tribe . . . possesses sovereign immunity."), *cert. denied*, 2009-NMCERT-007, 147 N.M. 361, 223 P.3d 358.

**{10}**    "Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. Indeed, Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Gallegos*, 2002-NMSC-012, ¶ 7 (internal quotation marks and citations omitted). "[T]ribal immunity is a matter of federal law and is not subject to diminution by the states." *Id.* Tribal immunity from suit is limited in two respects. First, "Article I, Section 8 of the U[nited] S[tates] Constitution provides Congress with the ultimate authority over Indian affairs, and, thus, Congress can expressly authorize suits against Indian tribes through legislation." *Id.* Alternatively, "[a] tribe can also waive its own immunity by unequivocally expressing such a waiver." *Id.*

**{11}**    There is no federal statute expressly authorizing the present suit against the Pueblo, nor has the Pueblo expressly waived its sovereign immunity. Yet, the district court concluded that the Pueblo was not immune from suit. The basis for this decision was the district court's observation that "this matter arises outside  the reservation." The court explained its reasoning in greater depth as follows at the hearing on the Pueblo's motion to

3

dismiss.

> I just can't see how the Pueblo can engage in purchasing property outside the reservation and if there is a dispute as far as title is concerned, I can't see how the Pueblo can just claim sovereign immunity and then everything is stalled. And just the basic fairness would keep me from granting this motion to dismiss. So it is denied.

The law governing tribal sovereign immunity does not support this conclusion.

**{12}** The locus of the Pueblo's activity does not determine the applicability of tribal sovereign immunity. The United States Supreme Court has "sustained tribal immunity from suit without drawing a distinction based on where the tribal activities occurred." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *see also Oneida Indian Nation of N.Y. v. Madison County*, 605 F.3d 149, 157 (2d. Cir. 2010) ("[A] tribe's immunity from suit is independent of its lands."). Armijo argues that we should not rely on the above quoted language from *Kiowa* because *Kiowa* is a contract case and the discussion therein is limited to contract issues. We reject this contention. *See Antonio v. Inn of the Mountain Gods Resort & Casino*, 2010-NMCA-077, ¶ 11, ___ N.M. ___, 242 P.3d 425 ("To the extent that [the appellant] argues that [*Kiowa's*] holding is limited to suits on contract, we disagree."), *cert. denied*, ___-NMCERT-___, ___ N.M. ___, ___ P.3d ___ (No. 32,450, July 13, 2010).

**{13}** The district court also premised its decision on "basic fairness." We understand the court's concern with the equities of the case. However, "sovereign immunity is not a discretionary doctrine that may be applied as a remedy depending on the equities of a given situation . . . . Rather[,] it presents a pure jurisdictional question." *Ameriloan v. Super. Ct.*, 86 Cal. Rptr. 3d 572, 582 (Dist. Ct. App. 2008) (internal quotation marks and citation omitted); *see also Ute Distrib. Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1267 (10th Cir. 1998) ("In the absence of a clearly expressed waiver by either the tribe or Congress, the Supreme Court has refused to find a waiver of tribal immunity based on policy concerns, perceived inequities arising from the assertion of immunity, or the unique context of a case.").

**{14}** The suit against the Pueblo was not authorized by federal statute nor did the Pueblo waive its immunity. Furthermore, the Pueblo has not affirmatively asserted claims in the suit and thereby consented to jurisdiction. *Contra Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244-46 (8th Cir.1995) (holding that by filing suit, the tribe consented to jurisdiction and "assumed the risk of the court determining that the [t]ribe did not have title to the disputed tracts"). We conclude that the district court erred in denying the Pueblo's motion to dismiss Armijo's cross-claim against the Pueblo.

**{15}** Armijo makes varying arguments in support of affirmance. First, he argues that we should affirm the district court's decision on equitable grounds and submits that he will be

4

without a ranch and without a remedy if we reverse and dismiss the matter. As stated above, equity is not a consideration in determining whether the Pueblo is immune from suit. *Ameriloan*, 86 Cal. Rptr. 3d at 582; *Ute Distrib. Corp.*, 149 F.3d at 1267. Armijo asserted at oral argument that damages are inadequate and will not make him whole as land is unique. The inadequacy of damages in disputes concerning land is well settled. *See Beaver v. Brumlow*, 2010-NMCA-033, ¶ 33, 148 N.M. 172, 231 P.3d 628 ("[I]t is well settled that land is assumed to have special value not replaceable in money."). Nevertheless, this doctrinal point is inapposite here. A court has no authority to assert its equitable powers over a matter involving a tribe where tribal sovereign immunity precludes the court from asserting jurisdiction over the case. Furthermore, our conclusion that dismissal is required here does not necessarily leave Armijo without a remedy. For example, Armijo may initiate proceedings against the Board for breach of the warranty covenants and damages. This may not be the remedy Armijo prefers, but it is a remedy. *Cf. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 514 (1991) ("There is no doubt that sovereign immunity bars the [s]tate from pursuing the most efficient remedy, but we are not persuaded that it lacks any adequate alternatives.").

**{16}** Armijo next contends that *City of Sherrill, New York v. Oneida Indian Nation of New York* (*Sherrill*), 544 U.S. 197 (2005), and *Oneida Tribe of Indians of Wisconsin v. Village of Hobart* (*Hobart*), 542 F. Supp. 2d 908 (E.D. Wis. 2008), evidence a jurisprudential shift concerning the law of tribal sovereign immunity. We understand Armijo's argument to be that these cases stand for the proposition that tribes may not assert sovereign immunity over claims stemming from tribal acquisition of non-tribal land and, therefore, the Pueblo is barred from asserting tribal sovereign immunity here because Armijo's cross-claim arises from the Pueblo's acquisition of non-tribal land. We are unpersuaded.

**{17}** The properties that are the subject of suit in *Sherrill*, *Hobart*, and the instant case, all consist of ancestral lands located outside of current tribal boundaries that were purchased on the open market by tribes (purchased lands). While we agree that the type of property is similar, the cases themselves, however, are distinguishable.

**{18}** *Sherrill* and *Hobart* do not explore the boundaries of a tribe's *sovereign immunity* from suit. Rather, they explore a tribe's *sovereign authority* over purchased lands and to what extent a state may compel a tribe to accept state laws applicable to those lands. *See Oneida Indian Nation of N.Y.*, 605 F.3d at 156-59 (clarifying that *Sherrill* concerns tribal sovereign authority over reservation lands, not tribal sovereign immunity from suit). In both *Sherrill* and *Hobart*, the tribes initiated actions against local municipalities for declaratory and injunctive relief requesting recognition of their sovereign authority over purchased lands. *Sherrill*, 544 U.S. at 213-14; *Hobart*, 542 F. Supp. 2d at 909. Specifically, the tribes argued that municipalities were precluded from imposing taxes and other state laws upon the purchased lands because of the tribes' sovereign authority over those lands. *Sherrill*, 544 U.S. at 213-14; *Hobart*, 542 F. Supp. 2d at 909. In both cases, the tribes' arguments failed. *Sherrill*, 544 U.S. at 202-03 (holding that "the [t]ribe cannot unilaterally revive its ancient sovereignty, in whole or in part, over the parcels at issue [and that the tribe] long ago

5

relinquished the reins of government and cannot regain them through open-market purchases from current titleholders"); *Hobart*, 542 F. Supp. 2d at 920-21 (same). Here, the Pueblo is asserting its sovereign immunity, not its sovereign authority over Section 16. Armijo confuses the two doctrines.

**{19}** Armijo relies specifically on language in *Hobart* regarding the municipality's power to condemn purchased land. We understand Armijo to be arguing that, because sovereign immunity did not bar the municipality from condemning the tribe's purchased lands in *Hobart*, sovereign immunity should not bar him from maintaining an adverse possession action against the Pueblo as to Section 16. Armijo misreads *Hobart*. As the court stated and as we have explained above, the basis for the decision in *Hobart* was sovereign authority not sovereign immunity. The court explained that "[l]and is either exempt from state law, or it is not." *Hobart*, 542 F. Supp. 2d at 921. The court went on to conclude that

> implicit in the [United States Supreme] Court's holding that Indian fee lands are subject to *ad valorem* property taxes is the further holding that such lands can be forcibly sold for nonpayment of such taxes. And, of course, if Indian lands are not exempt from forced alienation for nonpayment of state or local property taxes, it also follows that they are not exempt from the Village's power to condemn such land for a public highway and, further, to assess such property for the cost of improvements that specially benefit the property.

*Id.* While *Hobart* may bear on the issue of a tribe's sovereign authority over purchased land and a municipality's authority to tax that land, it does not alter the law governing a tribe's sovereign immunity from suit.

**{20}** In sum, we reject Armijo's contention that *Sherrill* and *Hobart* evidence a jurisprudential shift concerning the law of tribal sovereign immunity. The law regarding sovereign immunity remains as set forth in *Kiowa*—"an Indian Tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa*, 523 U.S. at 754.

**{21}** Armijo next claims that *Padilla v. Pueblo of Acoma*, 107 N.M. 174, 754 P.2d 845 (1988), controls whether the Pueblo may assert sovereign immunity in the present case. This contention also fails. First, "tribal sovereign immunity is a matter of federal law thereby making any reliance on state case law interpretations of federal law and cases questionable." *Bales v. Chickasaw Nation Indus.*, 606 F. Supp. 2d 1299, 1305 (D.N.M. 2009). Second, *Padilla* was impliedly overruled by *Kiowa*. *See Gallegos*, 2002-NMSC-012, ¶ 25; *Bales*, 606 F. Supp. 2d at 1304-05.

**{22}** Finally, Armijo challenges the constitutionality of tribal sovereign immunity on grounds that it prevents him from protecting his property in violation of Article II, Section 4 of the New Mexico Constitution and on grounds that tribal sovereign immunity creates a class (Indians) that are treated much differently than other citizens of New Mexico. The first

of these two claims is premised on Armijo's unsupported assertion that "there is no conceivable legitimate government purpose for perpetuation of the tribal sovereign immunity doctrine, and [its] application results in deprivation of constitutional rights." This contention ignores the fact that "tribal sovereign immunity [i]s a legitimate legal doctrine of significant historical pedigree." *Hoffman v. Sandia Resort & Casino*, 2010-NMCA-034, ¶ 6, 148 N.M. 222, 232 P.3d 901.

**{23}** The second argument appears to be a general objection to the very concept of tribal sovereign immunity. Such an objection is without merit. *Kiowa* continues "a longstanding tradition of federal common law in which tribal immunity has been recognized as a fundamental and inherent attribute of tribal sovereignty." Andrea M. Seielstad, *The Recognition and Evolution of Tribal Sovereign Immunity Under Federal Law: Legal, Historical, & Normative Reflections on a Fundamental Aspect of American Indian Sovereignty*, 37 Tulsa L. Rev. 661, 665 (2002). The doctrine of tribal sovereign immunity from suit "is firmly rooted in contemporary and historical decisions of the Supreme Court. It has remained intact even while the Supreme Court has limited other aspects of tribal sovereignty." *Id.* at 667.

**{24}** We conclude that the district court erred in denying the Pueblo's motion to dismiss Armijo's cross-claim for adverse possession against the Pueblo. The Pueblo is immune from suit and, therefore, the district court lacks subject matter jurisdiction over this claim. *See Gallegos*, 2002-NMSC-012, ¶ 36 (concluding that sovereign immunity precludes subject matter jurisdiction and affirming the district court's dismissal of the plaintiff-appellant's suit for lack of subject matter jurisdiction).

## B.    Indispensability

**{25}** The Pueblo also argues that Armijo's cross-claims against the nonappearing defendants should be dismissed pursuant to Rule 1-019 because the Pueblo is an indispensable party to those claims and cannot be joined. Despite the fact that the district court did not address the Pueblo's indispensability argument, we nevertheless conclude that it is appropriate to address this contention in light of our conclusion that the district court lacked subject matter jurisdiction over Armijo's cross-claim against the Pueblo for adverse possession. *See Sellman v. Haddock*, 62 N.M. 391, 397, 310 P.2d 1045, 1049 (1957) (observing that an appellate court may consider indispensability even if it was not raised at trial), *overruled on other grounds by Safeco Ins. Co. of Am. v. U.S. Fidelity & Guar. Co.*, 101 N.M. 148, 679 P.2d 816 (1984).

**{26}** "Rule 1-019 sets out a three-part analysis by which the court determines which parties are 'needed for just adjudication' in any lawsuit." *Gallegos*, 2002-NMSC-012, ¶ 39.

> First, the court must determine if the questioned party is necessary to the litigation. Second, if that party is deemed necessary, the court must then determine if joinder is possible. Third and finally, if the party cannot be

joined, the court decides whether "in equity and good conscience" that party is indispensable to the litigation.

*Id.* (citations omitted).

**{27}**   We begin our analysis with Rule 1-019(A) and examine whether the Pueblo is necessary to the litigation. *Gallegos*, 2002-NMSC-012, ¶¶ 39, 42. "The determination that a party is necessary involves a functional analysis of the effects of the person's absence upon the existing parties, the absent person, and the judicial process itself." *Id.* ¶ 42 (internal quotation marks and citation omitted). We find little difficulty in concluding that the Pueblo is a necessary party. In *Gallegos*, our Supreme Court concluded that a tribe was a necessary party based, in part, on the fact that the tribe had an "interest as a sovereign entity in participating in any litigation where its rights and obligations might be adjudicated." *Id.* ¶¶ 42, 47. This conclusion applies with equal force here. Armijo previously stipulated that the Pueblo has an interest in Section 16 and, thus, any judgment concerning title to Section 16 would necessarily require the joinder of the Pueblo. For these reasons, we conclude that the Pueblo is a necessary party.

**{28}**   "Once the court determines that a party is necessary, it evaluates whether anything precludes joinder of that party in the lawsuit." *Id.* ¶ 48. Here, sovereign immunity prohibits Armijo from making the Pueblo a party to the suit.

**{29}**   If, as in this case, the court concludes that a party should be joined if feasible but cannot be joined, Rule 1-019(B) provides that

the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Gallegos*, 2002-NMSC-012, ¶ 49. "[E]mploying these enumerated, but nonexclusive, factors, the court must determine whether the litigation can proceed without the necessary party or must be dismissed, the necessary party being deemed 'indispensable.'" *Id.*

**{30}**   Citing these four factors and *Gallegos*, the Pueblo asserts that Armijo's cross-claims for adverse possession against the nonappearing defendants must be dismissed. The Pueblo contends that a judgment rendered in its absence would be prejudicial because it has an obvious interest in protecting its tribal resources and participating in litigation where its

8

rights and obligations will be affected. The Pueblo also claims that no court-fashioned measure could alleviate this prejudice. The Pueblo asserts that any judgment rendered on the cross-claims against the nonappearing defendants for adverse possession would be inadequate because that judgment would remain subject to the Pueblo's acknowledged interest in Section 16. Finally, the Pueblo argues that the fourth factor is not to be considered in the indispensability analysis where the necessary party is a tribe. These arguments are well taken. *See id.* ¶¶ 1, 50-52 (finding the Pueblo of Tesuque an indispensable party pursuant to Rule 1-019 to a contract action between two non-Indian parties and dismissing the contract action for reasons almost identical to those advanced in the present matter by the Pueblo). We conclude that Armijo's cross-claims against the nonappearing defendants should be dismissed.

## III. CONCLUSION

{31} The district court's decision denying the Pueblo's motion to dismiss Armijo's cross-claim on grounds of sovereign immunity is reversed. Sovereign immunity bars the district court from exercising jurisdiction over that claim and it is, therefore, dismissed. We further hold that the Pueblo is an indispensable party under Rule 1-019 as to Armijo's cross-claims against the nonappearing defendants for adverse possession. Accordingly, we dismiss Armijo's suit in its entirety.

{32} **IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for *Armijo v. Pueblo of Laguna*, Docket No. 29,893**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-IA | Interlocutory Appeal |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-ID | Indispensable Parties |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-NM | New Mexico Constitution, General |

9

| | |
|---|---|
| **GV** | **GOVERNMNET** |
| GV-SI | Sovereign Immunity |
| | |
| **IL** | **INDIAN LAW** |
| IL-IL | Indian Lands |
| IL-TJ | Tribal and State Authority and Jurisdiction |
| | |
| **JD** | **JURISDICTION** |
| JD-SM | Subject Matter |
| | |
| **PR** | **PROPERTY** |
| PR-QT | Quiet Title |